We will hear argument next in No. 24-1177, PowerBlock Holdings v. iFit. Mr. Hartman. Mr. Hartman. Good morning, Your Honors. May it please the Court. The 771 patent claims motorized systems for changing the weight type, the weight, of a type of adjustable weight dumbbell called a selectorized dumbbell. The claims recite new combinations. Can I ask about that? This is a word I have never heard before. Is this actually common in the dumbbell field? It is. I mean, this is literally a dumbbell field. That's to be discussed on occasion. That wasn't a… Yeah, you're referring to selectorized dumbbells.  Yeah, so this is a term of art that is discussed in the patent. There are prior art patents that use the term selectorized dumbbell. In particular, PowerBlocks, the inventor's prior art patents, use this term.  Yes. It is a – if you look at the prior art, it dates from approximately 10 years before the priority date at issue in this case. There's a provisional application that was filed in 2006 to which the 771 patent claims priority. The prior art that's discussed in the patent dates to the mid-1990s, and it is the inventor's own prior art. The patent talks about the claim system's technical improvements over the prior art, including enhanced usability and safety and new functionalities, such as… So one of the things that comes up often in 101 cases is something that I think what you just said is to me illustrative. Safety is not a technical improvement. Safety can be a result of a technical improvement. The 101 line requires the specification of a technical improvement. It's not enough just to say something we have done, which we're not going to actually describe to you, has certain nifty properties to it, like safety or efficiency. So what are the technical improvements? And on this, I guess, I wonder if you can at least entertain the possibility that maybe Claim 20 is different from Claim 1. Absolutely, Your Honor. So focusing on Claim 21st, there are technical improvements that are provided. So one of those improvements is a feature that was not present in the prior art, a technological feature, which is the ability to perform remote weight adjustment. That is… So you want to focus on structure. What is the structure, not just the ability, that allows selectorizing or selecting the different weights? That is the concern, right? Sure. I mean, is there enough in that claim so it's not just an ability? Yes. So in Claim — so the claims do differ in this regard. Claim 20, the structure is the selectively energized electric motor that couples weight plates to both ends of the dumbbell's handle. Claim 1 is a little bit different. It requires a movable selector that is capable of being deposed in different adjustment positions and an electric motor that is coupled to the selector that moves the selector according to the desired weight. What you just described is actually a genuine — I don't want to draw a legal conclusion — a genuine difference in the amount of structure described. Having a structure to pick something up or move it and to put into position, which is in Claim 1, that's not really in Claim 20. And I will tell you, when I read Claim 20, almost the first thought was, oh, this is O'Reilly against Morse. Claim 8, right, the mid-19th century case where this one errantly overbroad claim in Morse's telegraph patent said, use any kind of force or some sort of force to produce a result at the end, making markings at a distance. And the Supreme Court said that's not enough structure. A whole bunch of other claims in the telegraph patent had just enough additional structure that they escaped that invalidity. In that case, as you know, whatever its original intent has become the kind of foundational case for 101 limitations. Why isn't at least Claim 20 like that, which just says cause something to occur without identifying a structure for its occurring?  Sure. Except for turn a motor on. Yes. Thank you, Your Honor. So I think there is a difference, and it's what is being caused to happen, because it's not just weight being added in the abstract. There's a specific way that weight is added to the dumbbell, which is that weight plates are coupled to both ends of the handle. There are alternative methods to adding weight to a dumbbell. Weight plates is a specific approach. It's different from something like adding balls of weight or cubes of weight or something like that. So, yes, there is more structure in Claim 1 as compared with Claim 20. But Claim 20 does still include enough structure so that it is a specific means and would survive 101. So, for example, if you had a selectorized dumbbell where instead of adding weight so if you wanted 50 pounds, it would take 25 here and 25 here and swap out the plates for different sized plates. That wouldn't infringe this claim. The devil is in the details. But if we're talking about a weight and a configuration other than a weight plate, which is something that's known in the art and discussed in prior selectorized dumbbell patents, then that would not practice Claim 20. I'm thinking of two types of typical weight structures. One, you've got weights of the same size and weight and you select how many of them you're going to lift. And other systems where you select different size weights to increase weight. This seems to be, if you're going to add, it seems to be the main structure you're pointing to in Claim 20 is this adding weight plates. So we're in the realm of weight plates as opposed to different size weights. I think that's one type of structure that's discussed in Claim 20. I would agree that if there are different configurations of weights aside from a weight plate that are added to both ends of the dumbbell handle as opposed to some other way of attaching them to the dumbbell, then that would be outside the scope of Claim 20. There is another. So let's say we've got one structure, right, that seems to scope this down. Because one alone we're kind of concerned about capturing the whole idea. What is the other structure in Claim 20? What else besides these weight plates can we kind of sink our teeth into? Yes. The other structure is an electric motor. And an electric motor is a specific kind of motor. The specification talks about motors generally and then says, in particular, an electric motor. There are other approaches to motorizing weight adjustment. So things like a hydraulic motor or a pneumatic motor would be structural alternatives to the electric motor. That's recited in Claim 20. What about selectively energized? What sort of work does that do in the Claim? I think that does some work as well. So selectively energized would mean that the electric motor is only operative at certain times. It has to be selectively energized. It's not sort of continually energized or continually powered. So the selectively energized would be a more efficient approach to carrying out this weight adjustment. But it's not the only approach. Does that work in tandem with the limitation directed to the data entry device controlling the energization of the motor? It does. It does. The data entry device is accepting a weight selection decision. It's input by the user. It's that weight selection decision that operatively controls the energization of the motor. So that is another part of the Claim, another part of the Claim language and a requirement that must be met. That does absolve some of the preemption concerns that underline the district court's decision. I do want to talk a little bit about the district court's approach to the precedent that it considered. I think it's important to consider that there's no other decision that we're aware of, certainly no decision from this court that found or held a claim that was directed to a mechanical system comprising physical components that coordinate to perform mechanical process as falling under the abstract ideas exception. There are other cases that deal with combinations of physical components. I'm sorry. And O'Reilly against Morris is not such a thing, which is even better than a Federal Circuit precedent? So I think this goes to the difference, though, between merely reciting physical components and what processes they're performing. In O'Reilly versus Morris, the process related to the use of electromagnetism. That's an abstract process. It's not something tangible or physical. In other cases that deal with physical components, so I think cases like you versus Apple or Chamberlain, there were physical components that were cited, but they don't really do anything mechanical. They're there for receiving information, for performing processes regarding information, for wirelessly transmitting information, which is similar in substance. I don't have Morris Claim 8 in front of me. I do. Oh, you do. I do. It says, I do not propose to limit myself to the specific machinery or parts of machinery described in the foregoing specification claims, semicolon. It's a different way of claiming. The essence of my invention being the use of the motive power of the electric or galvanic current, which I call electromagnetism, however developed for marking or printing intelligible characters, signs, or letters in any distances, being a new application of that power of which I claim to be the first inventor or discoverer. So marking. So at the distal end, there's something mechanical going on. I think the substance of that claim and what the language appeared to be directed to was the use of electromagnetism that's specifically called out in the claim language. That's an intangible phenomenon as opposed to a mechanical process that involves physical components coordinating together to achieve a physical act or perform a physical act. Right. Just so you, maybe you do, but just to make sure you understand my point, the last bit of Claim 8 is a physical act of making marks. That is, I understand Your Honor's concern. That is so a specific result that is accomplished via this intangible phenomenon of electromagnetism. So the only physical act that is discussed in Claim 8 was simply the result of using the abstract idea. That's different from Claim 20, which involves physical components that are actually performing mechanical actions as opposed to just the end result of weight is added to the dumbbell. There's a specific process that's recited in the claim or that's contemplated by the claim that it's a stepwise process where the data entry device operatively controls the energization of the motor. The motor couples weight plates. It's two weight plates or a number of weight plates that have to be coupled to both ends of the dumbbell's handle. So that is a different result in nature from what O'Reilly v. Morse talks about. Thinking about the more recent cases, so the example that comes to my mind is Chamberlain, which involved a movable barrier operator system. But the claims, although they recited some physical components, those physical components weren't actually like moving the barrier. They were transmitting wireless information or transmitting information wirelessly as opposed to via hard wire connection. So that's another... Information to the garage door moving device. Information to the... Like... Trying to remember where exactly the information was going. Open it or close it. These are the only two relevant pieces. No, it's actually not the case. The claim was transmitting status information about the system. So it wasn't even here's a signal that we're sending wirelessly to that you would assume would ultimately result in the garage door opening or closing. It's just a status check on the system. That's the only information that was being communicated.  If there are no further questions, I'll reserve the balance of my time. Okay. Thank you. Thank you.  May it please the Court. My name is Mark Ford. I represent IFIT, the accused infringer and appellee in this case. PowerBlock argues that the claims at issue here are purely mechanical, and they lack any commonality with claims that this Court has ever held ineligible because the claims of the 771 patent fail to recite a general purpose computer. PowerBlock asserts that the types of mechanical systems claimed by PowerBlock are, quote, foundationally protectable under Section 101, and that affirming the district court decision would represent a sea change in Section 101 jurisprudence and put at risk every claim to a mechanical device. There's a lot wrong with this argument, but I'll address two problems. First, PowerBlock's assertion that the claims at issue are purely mechanical is wrong. They are not. While the claims recite some mechanical components, they also recite electronic components. Mr. Ford, why doesn't Claim 1 give enough structure to make it so it's not abstract? You know, like some of our case law says, you can't really claim the function. You can't say a article for doing this. And, I mean, so why isn't it enough that it has a particular electric motor coupled to a selector that is energized from a source, will physically move the selector into a position? Why isn't that specific enough to not be abstract? So if you look at the difference between Claims 1 and Claim 20. Let's focus on Claim 1 for now. Sure. Because I do think there's a difference between 1 and 20, but I just want to focus on Claim 1 because I really don't necessarily see the parties arguing these separately. So I would like to have your take on that. Sure. So Claim 1, the selectorized dumbbell in Claim 1, recites more structure, as you've identified, than, for example, Claim 20. But the structure that's identified and recited in Claim 1 is nothing more than conventional components that have existed in these selectorized dumbbells. What about the combination of components? I understand what you're saying. We do have some case law that says when you're trying to determine what a claim is directed to under LS Step 1, sometimes we're going to really look at what is the focus of, you know, the novelty, if you will, purported novelty of the invention. But in this case where you have these components all interacting with one another, how can you ignore certain structure in trying to figure out what these claims are directed to? Do you understand my question? I do, yeah. So the way that the claims are connected is they use very result-oriented functional limitations, right? So they recite a dumbbell, they recite an electric motor in Claim 1, and they add a data entry device in Claim 2. But if you look at the way that these components are connected, they use a lot of functional result-oriented limitations. What about the language? I mean, I just said to you specific things that I thought were structural in the claim. So it says, you know, I'm going to give you more then. There's a stack of nested left-weight plates and nested right-weight plates. There's a handle. Important parts, there's a selector having different adjustment positions, and it's configured to couple numbers of left-weight plates to the end of the handle or select numbers of right-weight plates to the end of the handle. Then it says there's an electric motor operatively connected to the selector, at least whenever weight adjustment takes place, and that that, when energized, physically moves the selector into the adjustment position. I mean, so it seems like there's a description of the – it says operatively coupled, so there could be some interlinkings in between. But why isn't this sufficient structure to make it so this is not just functional or an abstract idea? So if you look at the background of the invention, they identify well-known components of a selectorized dumbbell, and it lists all those components. For example, column 1, line 30, it talks about the selector comprising a connector pin, manually inserted into different locations on the handle to vary the number of weights. In that description of the prior art, is there an electric motor operatively connected to the selector? No, I don't disagree that there's not in the prior art. So isn't your argument really that it's not novel or it's not non-obvious? I mean, if these components were in the prior art and this combination is just adding another component or adding a few more components, aren't you – isn't your problem really 103 and not technical subject matter? Well, there is a little bit of overlap, I think, with section 103, but the inquiry in section 101 is different. And changing – merely changing the technological environment in which a known component or conventional element is used is not enough to get around section 101. For example, in Affinity Labs, the claims recited an abstract idea. And it says that the limitation, the restriction of delivery of out-of-region content to an electrical device doesn't alter the result. All that limitation does is it confines the abstract idea to a particular technological environment, in this case, cellular telephones. And I would say in this case, we have selectorized dumbbells, and we've changed the technological environment in which these selectorized dumbbells are used from a manual environment to an environment where a selector pin is moved via a data entry device and an electric motor. And if you look at the steps – like, what if the claim said making the selectorization of the weight automatic? That might be a problem. But what you just said was you said there's a motor, and it changes the selector pin. Why isn't that enough to make it so, in this mechanical invention, it's at least not abstract? There might be other problems with the claim. So moving a selector pin is exactly how the manual systems operated. So there has not been a change in the process, right? So the way that the conventional selectorized dumbbells worked was you would manually turn a knob, and it would move the selector pin. And in this case, we've changed the technological environment so that that selector pin is now being moved, not via a manual rotation of a knob, but rather via a data input device and a motor. Is there a reason why – I mean, a lot of the case law I think you cite and are relying on is involved in the computer technology, software technology, and there are some ideas that you can't just say do it on a computer. And so it feels like maybe you're adopting some of that concept to say you can't just say do it automatically. Yeah. So I think the – I don't disagree that the weight of the case law in this area of automation is with a computer, but not exclusively. And I think the Chamberlain case is a good example. And in that case, a general purpose computer was not recited, but components that could be used in a general computer were recited, and the claims were found to be patent ineligible. They recite a controller, an interface, and a data transmitter. They didn't recite any general purpose computer. And when this Court found those claims to be abstract, it rejected this very argument that PowerBlock is now making. This Court said, Patentee's reliance on the asserted claims, be it directed to a physical, real-world manifestation of an improved machine, is misplaced. Without more, the mere physical nature of the claim elements, controller, interface, wireless data transmitter, is not enough to save the claims from abstractness. These conventional components, all recited in a generic way, are no better equipped to save the claim from abstractness than were, for example, the conventional computer in Alice. So if we're – It's a little different, though, don't you agree? In that, as your adversary said, I think that that was really focusing on sending a signal as opposed to a physical action, or physical – here, the claim does have more physical characteristics. Right. What's your response to that? So that case was about garage door openers, right, and sending a signal to a garage door to make it open or close. I thought it was sending it to a controller of a garage door. Okay, to a controller. No, I mean, do you see the slight difference? There's a difference. If you're interacting, sending signals to a controller of whatever, as opposed to physically moving a weight. Is there a difference? So I think that the controller in both of these cases does a similar function, right? It controls the – it receives the data from a data input device. It converts it into an electric signal, and then it sends it to the electric motor that then interprets that signal to either, in the case of Chamberlain, open or close a garage door. In the case of PowerBot, add or remove weights from a selectorized dumbbell. So the prior art description of the non-electric selector, can you just describe how that works? Sure. So in the – the systems work exactly the same way, Your Honor. Yeah, but I don't understand how the new one works either. So I want to start from the old and understand what the new might add to that. So there is a selector that moves inside the selectorized dumbbell, and depending on its position, it will either grab or release certain weight plates from the ends of the handle. So in the pre-electric one, it doesn't move by itself. Is a human being with a hand moving it? That's the level of detail I'm asking about. Sorry, I apologize. Yes. So in the pre – in the purely manual selectorized dumbbells, a person would actually rotate a knob, and that knob would then affect the movement of the selector. And there's some gear on the knob that translates the rotary motion into some kind of linear motion.  Okay. Moves the selector to either, like I said, add more plates or remove plates from the selectorized dumbbell. Yeah. And I'll note – And now in this patent, what's happening? So with regard to the dumbbell, the exact same thing is happening. A selector pin is moving to either add more weights or take weights off of the dumbbell. Now the way that that selector pin receives its instruction is a different technological environment. So it can be – it might, for example, be an electric motor with a belt attached to the old knob, so it turns the knob that otherwise a hand would have to turn. That's exactly right. Yep. So in this system, you have a data entry device where somebody inputs an amount of weight. That amount of weight is then converted to an electric signal and sent to the electric motor, and then the electric motor converts that electric signal into physical movement of the selector. Yep. But the result is the same, and that's a big distinguishing feature in cases like McRow, right, where you had actually a different process implemented to the underlying automated action, right? In McRow, you have a set of rules that's implemented by a computer as opposed to the prior art way of doing it where animators would just sort of use their intuition to figure out ways to move the face, right? There was a difference in that case in the way it was done, the actual process. Same with FinJam. In this case, there's no difference in the process. At the end of the day, the selector pin is being moved one direction or the other to either add or remove weights from the dumbbell. So I wanted to just briefly touch on this case. It's cited several places by this court, CardioNet. I think it's also cited in McRow. But the focus of Step 1 is whether the claims focus on a specific means or method that improves the relevant technology, or are they instead directed to a result or effect that is itself the abstract idea. The claims of the 771 patent fail both of these inquiries. They're not directed to a specific means or method, and they do not improve the relevant technology. So when determining whether you're going to use a particular method, it's just a motion to dismiss, is that right? That's right. So how can you say as a matter of law it doesn't improve the technology when the patent specification itself says there are some purported advantages that come from doing this automatically? Like, for example, you don't have to worry about the user hurting themselves because they haven't placed the pin properly. So I'm just wondering, because that's a fact question, right? Well, it's – there are certain improvements that will weigh in favor of patent eligibility under Section 101, but not all improvements, right? They have to be improvements to the technology. And this Court's case in Adassa is very instructive because it identified examples of what technological improvements are. It says they can be, for example, an improvement to a technological process or to the underlying operation of a machine. But they can't be improvements that are generated by virtue of the automation or the abstract idea itself. So the claims in this case don't improve either the process of weight adjustment on a selectorized dumbbell, and they also don't – But what about where the spec says it does improve the process because it provides a better safety? Like, it's more likely that it's going to be done properly, the pin will be put in properly. And the reason why I say that is I hear what you're saying about those cases. You've got really good arguments here. But I would just say in response to that, we always have to be careful when we read statements that are in a specific – in an opinion from the Court to bear in mind the facts of that case, meaning the claims and the invention that is recited in that case. Right? And so here I just keep on thinking, well, why can't I credit or shouldn't I at least credit for purposes of a motion to dismiss that this specification says that this structure for moving the weight, using the motor to change the selector and change how many weights are picked, that that provides an advantage in that people are less likely to do it improperly. So there are, like I said, certain improvements that – So it's your view that under our case law, that is not the kind of improvement that I should take into account? Yeah, absolutely. And there's cases that I would point this Court to that do identify changes to the process that are relevant to a Section 101 inquiry. And one of them is McRow, where mathematical rules were used instead of subjective determinations. Finjan is another one where you were using code to identify malware, as opposed to – I can't remember exactly, but there were other elements that were used in the manual process to identify this malware. Here, in this case, the same process is being used. All that's happening on the selectorized dumbbell is the selector pin is being moved to either grab more weights or take more weights off. Another good example – I know I'm out of time, but one more good example is the Echo Services case. In that case, the very first improvement that this Court identified when finding those claims patent eligible was that it produced an improved – a higher degree of quality of engine washing procedure. In other words, the underlying process had improved. In this case, if you took a dumbbell that was manually adjusted to 30 pounds and you took a dumbbell that was adjusted with an automated system to 30 pounds and you put those two dumbbells in front of somebody and you say, could you tell the difference between each of these, which one was done manually and which one was done under an automated system, you wouldn't be able to tell because they would both just have – What about the fact that the specification says that for one of them there might be an error? Well, my response to that, Your Honor, would be that errors are not uncommon in electric systems as well. I know. It's just it's a fact question. Right. But the patent itself actually points out that there can be errors in the electric systems. For example, in column 8, line 20, it talks about if the signal is not received or if an error signal is received due to overheating or jamming of the motor. Got it. Okay. Thank you very much. Thank you. Thank you. So do your claims cover having an electric motor with a belt attached to the knob of the old device? Yes. There are dependent claims that specifically recite the electric motor. Speaking of Claim 13 and Claim 14, which depend for Claim 1, that recite a specific system that uses a motor drive shaft that is included with the electric motor that is connected with selectors for a plurality of dumbbells through a belt and pulley system. So that kind of specific approach was claimed, in fact. I want to quickly respond to just three points that my friend raised. As Judge Stoll was asking about, the procedural posture here, it is important. This was a 12b6 motion. The factual statements have to be taken as true. I need to clarify counsel's description of the prior art process for adjusting the weight in a selectorized dumbbell, because that process is not discussed in the background of the invention. The background of the invention actually describes the process differently. Rather than turning a knob to move the selector, the background of the invention specifically states in Column 1, beginning in Line 49, the selectors used to adjust the weight of the dumbbell are mechanical members that must be directly gripped and manipulated by the user. So it's not a knob that turns, that causes some other action to occur. It's the selector itself that has to be manually manipulated by the user. In fact, the system that my friend was describing is actually a different aspect to the invention that's discussed elsewhere in the specification that uses a configuration other than an electric motor and a data entry device to effectuate adjustment. That's shown in Figure 11 and discussed in Column 6. And what's your third point? That was only my first point. I'll get to my next point. Your Honor was asking about, raising some questions about obviousness. I do agree that I think the thrust of the district court's opinion really sounds more like an obviousness decision. I think the language that the district court used was something along the lines of the data entry device and electric motor are only the conceivably, your Claim 20 recites only the conceivably necessary components to perform automated weight stacking. But whether something's conceivably necessary or not, that's the language of obviousness. Obviousness is a separate inquiry from 101, as the Court knows, and it involves certain requirements that would not be present under 101 and certainly not on a motion to dismiss. It requires underlying factual finding. It requires the lack of hindsight, which I think is important. We're in 2025 thinking about an invention that claims priority to a 2006 application. In 2006, given the state of the technology, it's unclear what components would have been conceivably necessary at that time. The third point, and I'll be quick, is about Chamberlain. Chamberlain, again, does not concern actual movement of the barrier. It concerns transmission of status information about the system. So there's not a mechanical process that's contemplated by the claimant issue in Chamberlain. Thank you, Your Honors. Thank you. Thanks to both counsel. The case is submitted.